```
            IN THE UNITED STATES DISTRICT COURT
                WESTERN DISTRICT OF ARKANSAS
                    FAYETTEVILLE DIVISION
```

ROYAL A. SMITH                                              PLAINTIFF

VS.                         CASE NO. 04-5302

CHUCK EGGBRECHT, Police
Officer for the City of
Centerton, Arkansas, in his
official and individual
capacities                                                  DEFENDANT

### ORDER

Now on this 23d day of December, 2005, comes on to be considered **Defendant's Motion for Summary Judgment (Doc. 12)** and **Plaintiff's Motion for Summary Judgment (Doc. 15)**.  The Court, being well and sufficiently advised, concludes that **plaintiff's motion (Doc. 15)** should be **DENIED** and that **defendant's motion (Doc. 12)** should be **GRANTED** with regard to plaintiff's official-capacity claims but **DENIED** with regard to plaintiff's individual-capacity claims.  The Court finds and orders as follows with respect thereto:

### BACKGROUND

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, asserting that defendant violated his due process rights by intentionally delaying taking him before a magistrate for a probable cause determination after arresting him without a warrant. The following facts are not in dispute unless so noted:

1. At about 6:05 p.m. on August 11, 2004, defendant, a police officer for the City of Centerton, Arkansas, was notified of an accident. When defendant arrived at the scene, he discovered that a truck had wrecked into a utility pole and by-standers informed defendant that the driver of the truck, a "Hispanic," had left the scene.

2. According to plaintiff, he was the driver of the truck and had a Hispanic passenger. Following the accident, he left the scene to call his mother and ask what he should do because he had never been involved in a motor vehicle accident before. Plaintiff then returned to the accident scene, identified himself as the driver of the truck, and explained that he had been driving the truck when his dog jumped into his lap, causing him to lose control of the vehicle and hit the utility pole.

3. According to defendant, by-standers at the scene informed him that plaintiff was not the driver of the truck. Defendant therefore did not believe that plaintiff was telling him the truth about the accident and arrested plaintiff for obstruction of governmental operations, a class C misdemeanor.

4. According to plaintiff's mother, who had arrived at the scene:

> []When I asked [defendant] what he was arresting my son for, he screamed at me, ... saying, "because he's f------ lying to me!"
>
> []When I asked him where he was taking [my son] so that I could bring a bondsman, he told me that he was taking

my son to the Benton County Jail and that he didn't have to turn in any paperwork for 74 hours. (Doc. 17 Ex. 4 ¶ ¶ 2 -3 .)

5. According to plaintiff, "[Defendant] told me before I ever went to jail that he was going to hold up on the paperwork and hold me as long as he could before he had to file his paperwork." (Doc. 17 Ex. 2 at pg 22.)

6. At his deposition, defendant was asked, "Did you, at any time, tell either that boy or his mama that you were going to make sure that he stayed in jail the maximum amount of time until he got out on bond or got before or judge ... ?" Defendant acknowledged that he "made a statement similar to that" and explained:

> To the best that I can remember, I made a statement like, you know, I've got 48 hours to hold you, you know and I'm going to take you to jail. I've got 48 hours to get the paperwork done over there and I've got to work the accident and all that. And if it takes me all 48 hours, then it does. (Doc. 17 Ex. 5 at pgs. 14-15.)

7. Plaintiff was booked into the Benton County Jail on August 11, 2004, at 7:20 p.m.

8. The Centerton Police Department's procedure for warrantless arrests such as that involving plaintiff is for an arresting officer to draft a probable cause affidavit which he then turns in to a supervisor for review. The supervisor reviews the affidavit, forwards it to the Benton County Jail, and a probable cause hearing is then scheduled.

9. Following plaintiff's arrest on the evening of August 11th, defendant returned to the police department and began working

on a probable cause affidavit.  However, defendant was unable to complete the affidavit that evening because he had to respond to an emergency call, which occupied his time until his shift ended.

10.   Defendant did not return to work until 3:00 p.m. the following day, August 12th, at which time he completed a three-page probable cause affidavit and put it in his supervisor's "in-basket."  The affidavit was not forwarded to the jail that day, however, because plaintiff's supervisor "goes home at 3 o'clock" and thus, he had left for the day by the time defendant completed the affidavit.  (Id. at 12.)

11.   Defendant's supervisor reviewed the affidavit the next morning, August 13th, and took it to the jail.  A probable cause hearing was then held[1] and plaintiff was released at approximately 1:00 p.m. on August 13th, after having been detained for approximately 42 hours.

12.   The obstruction of governmental operations charge was ultimately dismissed and plaintiff pled guilty to careless driving.

13.   Defendant acknowledged that he could have processed plaintiff's probable cause affidavit in a more timely manner if he had worked overtime to do so, but explained that he would have had to contact his supervisor to obtain approval to work overtime;

---

[1]The time of the probable cause hearing is not specified by the parties.

otherwise, defendant would have been "doing it for free."  (Id. at pgs. 15-16.)

**I**

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 12)**

1. Defendant argues that he is entitled to summary judgment on the claims against him in his individual capacity, as he is entitled to qualified immunity.  Defendant argues that he is also entitled to summary judgment on plaintiff's claims against him in his official capacity, as plaintiff cannot establish any constitutional violation resulting from a municipal policy or custom.

2. The standard to be applied to a motion for summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure and provides for the entry of summary judgment on a claim

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also* Carroll v. Pfeffer, 262 F.3d 847 (8th Cir. 2001); Barge v. Anheuser-Busch, Inc., 87 F.3d 256 (8th Cir. 1996).  Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  Accordingly, all evidence must be viewed in the light "most favorable to the non-moving party."  F.D.I.C. v. Bell, 106

F.3d 258, 263 (8th Cir. 1997); *see also* Bailey v. United States Postal Service, 208 F.3d 652, 654 (8th Cir. 2000).

Where a movant makes and properly supports a motion for summary judgment, the opposing party may not rest upon the allegations or denials of its pleadings; rather, the non-movant must "set forth specific facts showing that there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 256. The non-moving party must "make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." Wilson v. Southwestern Bell Tel. Co., 55 F.3d 399, 405 (8th Cir. 1995).

3. **Individual-Capacity Claims/Qualified Immunity** -- Defendant argues that he is entitled to qualified immunity on plaintiff's claims against him in his individual capacity.

Government officials performing discretionary functions are entitled to qualified immunity unless their alleged conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The issue of qualified immunity requires a two-step inquiry.

First, the Court must determine whether the facts as asserted by the plaintiff show the officer's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, the Court must determine whether the right was clearly established, that is, "whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

(a) With regard to the first inquiry, the Court concludes that the facts asserted by plaintiff are sufficient to assert the violation of a constitutionally protected right. Plaintiff had a constitutionally protected right to have a prompt judicial determination of probable cause following his warrantless arrest. See Gerstein v. Pugh, 420 U.S. 103, 113-14 (1975). A defendant may be detained only for as long as it takes to process "the administrative steps incident to arrest." Id. at 114. The Supreme Court has held that "judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). However, a delay, even within the 48-hour period, may violate Gerstein if the arrested individual can prove that the probable cause determination was "delayed unreasonably." Id. A delay is unreasonable if it is "motivated by ill will against the arrested individual, or [a] delay for delay's sake." Id.

As noted, there is evidence that defendant was angry with plaintiff because he believed plaintiff was lying about being the driver of the truck involved in the accident. There is also evidence that defendant made statements indicating he intended to delay processing the necessary paperwork for plaintiff to obtain a

probable cause hearing.

Defendant maintains that even if plaintiff could establish that defendant harbored some sort of ill will toward him, plaintiff cannot "show an underlying causal connection between [defendant's] ill will and a delay in the plaintiff's probable cause hearing," because the undisputed evidence indicates that defendant completed the probable cause affidavit as soon as his work schedule permitted.  (Doc. 22 at pgs. 2-3.)  The Court rejects that contention in light of the facts that defendant admitted he could have contacted his supervisor to obtain approval to work overtime to complete the probable cause affidavit or he could have simply done it without receiving overtime pay.

Accordingly, the Court concludes that the facts asserted by plaintiff could establish that defendant intentionally delayed plaintiff's probable cause hearing out of ill will toward plaintiff or for "delay's sake" and therefore violated plaintiff's constitutionally protected rights.

(b)  The second inquiry in the qualified-immunity analysis requires the Court to determine whether it would be clear to a reasonable officer in defendant's situation that his conduct was unlawful.

The Court believes a reasonable police officer would have known that intentionally delaying a probable cause hearing was an unconstitutional act on his part.  Further, the Court believes it

also would have been clear to a reasonable police officer that if he was going to arrest someone on a simple misdemeanor charge -- rather than just issuing a citation, he would be obliged to complete the probable cause affidavit as quickly as possible, even if that required working overtime with or without pay. Finally, in the Court's view, a fact finder might well conclude that it would not have taken a reasonable police officer much time to complete a three-page probable cause affidavit detailing the events that led to plaintiff's arrest.

Based on the foregoing, the Court concludes that defendant is not entitled to qualified immunity on plaintiff's claims against him in his individual capacity.

4. **Official Capacity Claims** -- Plaintiff's claims against defendant in his official capacity are actually claims against the City of Centerton. See Spencer v. Knapheide Truck Equip. Co., 183 F.3d 902, 904-05 (8th Cir. 1999), cert. denied, 528 U.S. 1157 (2000). To establish municipal liability, plaintiff must show that the violation of his constitutional rights was caused by a policy or custom of the City of Centerton, the implementation of which amounted to deliberate indifference to his constitutional rights. See Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005). Deliberate indifference requires a showing of more than mere negligence, it requires a showing that the detention "shocks the conscience and that it was caused by a county policy or custom

evidencing a level of culpability akin to criminal recklessness." Id. at 1127.

Plaintiff has offered no evidence that the procedures for processing warrantless arrests resulted in a pattern of unreasonable delays in probable cause hearings, no evidence of any pattern of official tolerance by the City of Centerton concerning such delays, or any other evidence that the delay he encountered "resulted from the sort of intentionally harmful or reckless conduct needed for a showing of deliberate indifference." Id. Accordingly, defendant is entitled to summary judgment on plaintiff's claims against him in his official capacity and it will be so ordered.

## II

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. 15)**

1. Plaintiff argues that he is entitled to summary judgment because defendant "intentionally and illegally subjected the [p]laintiff to excessive, unnecessary incarceration, making no effort to ensure that [p]laintiff, whom he had arrested for a misdemeanor, received a probable cause hearing ... within a reasonable time." (Doc. 15 ¶ 2.)

2. Whether defendant intentionally caused the delay in plaintiff's probable cause hearing is a fact in dispute.

Accordingly, plaintiff is not entitled to summary judgment.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that **Defendant's Motion for Summary Judgment (Doc. 12)** should be, and hereby is, **GRANTED** with regard to plaintiff's official-capacity claims and the same will be dismissed;

**IT IS FURTHER ORDERED** that **Defendant's Motion for Summary Judgment (Doc. 12)** should be, and hereby is, **DENIED** with regard to plaintiff's individual-capacity claims; and

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Summary Judgment (Doc. 15)** is **DENIED** in all respects.

/S/JIMM LARRY HENDREN
JIMM LARRY HENDREN
UNITED STATES DISTRICT JUDGE